IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-146

Filed: 17 November 2020

Catawba County, No. 17 CRS 4801

STATE OF NORTH CAROLINA

v.

NOWLIN POWELL CROOKS

Appeal by defendant from judgments entered 19 September 2019 and 20 September 2019 by Judge Kevin M. Bridges in Catawba County Superior Court. Heard in the Court of Appeals 8 September 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Donna B. Wojcik, for the State.*

*Stephen G. Driggers for defendant.*

DIETZ, Judge.

Defendant Nowlin Crooks appeals his conviction for possession of a firearm by a felon, arguing that he was entitled to a jury instruction on the defense of justification. He also challenges the civil judgment entered against him for the attorneys' fees of his court-appointed counsel.

As explained below, the trial court properly declined to instruct on justification because undisputed trial evidence showed that Crooks continued to possess the firearm well after any potential threat had ended despite many options for

relinquishing possession. We therefore find no error in the trial court's criminal judgment.

The State concedes error with respect to the civil judgment for attorneys' fees because Crooks was not provided sufficient opportunity to be heard. We agree and therefore vacate that judgment and remand for further proceedings.

**Facts and Procedural History**

This case involves two versions of events so deeply inconsistent that telling both accounts is impractical. Because this appeal concerns the sufficiency of evidence supporting a jury instruction on justification, we recount the version of events described by Defendant Nowlin Crooks, which is the more favorable version for his argument, and ignore the accounts of the State's witnesses, who offered a dramatically different version of events. *State v. Mercer*, 373 N.C. 459, 464, 838 S.E.2d 359, 363 (2020).

In August 2017, Crooks was walking to the store when he passed by David Harrison's home in a trailer park. Harrison was on his porch and invited Crooks inside for a drink. Crooks and Harrison began drinking bourbon. The two men had seven or eight shots of bourbon.

While the two men were drinking, Harrison suddenly stood up while only a few feet from Crooks, pulled a pistol out of his pocket, pointed it toward the wall near Crooks, and fired a shot at the wall. Before pulling out the gun, Harrison had not

threatened Crooks in any way. Harrison also did not appear angry or upset. As soon as Harrison fired the shot at the wall, Crooks stood up, grabbed the pistol from Harrison, and left the trailer.

Crooks then went looking for a woman named Karen Tucker, who was dating his father. Crooks believed that Tucker likely would be sober and safely could take the gun from him. Crooks went to a nearby trailer and knocked on the door. Karen Tucker's daughter Lacey answered the door, but Crooks did not give the gun to Lacey because Crooks worried that she was high on drugs. Lacey's sister Echo also was present in the trailer. Echo told Crooks that Karen was nearby in Crooks's father's trailer. Crooks testified that he did not try to go to his father's trailer after learning that Karen was there because the "sheriffs got over there." Instead, Crooks waited with the gun in his possession, in the presence of Lacey and Echo, until Karen arrived. Crooks then gave Karen the gun.

Law enforcement who responded to the trailer park found a number of intoxicated people outside the trailers, including Harrison and Crooks. Harrison claimed that Crooks stole the gun from his living room while Harrison was in the bathroom. Karen Tucker's daughter Lacey told officers that Crooks pounded on the door to her trailer and, when she opened it, Crooks pointed the gun at her and went into the kitchen of the trailer with her while holding the gun to her head.

Crooks told the officers he took the gun from Harrison after Harrison held it

close to him and fired a shot at the ceiling. None of the other witnesses heard any gun shots. Officers searched the inside of Harrison's trailer and did not find any bullet holes but did find a shell casing sitting on a coffee table.

The State later charged Crooks with a number of offenses, including possession of a firearm by a felon. At trial, Crooks requested a jury instruction on the defense of justification. The trial court denied the request. The jury found Crooks guilty of possession of a firearm by a felon. The trial court sentenced Crooks to 25 to 39 months in prison and also entered a civil judgment of $2,220 against Crooks for the attorneys' fees of his court-appointed counsel. Crooks filed a timely *pro se* notice of appeal that had a number of procedural defects. Crooks never served the notice of appeal on the State.

Crooks later petitioned for a writ of certiorari to remedy the defects with his notice of appeal. The State does not oppose the petition. In our discretion, we allow the petition and issue a writ of certiorari to address the merits of this appeal. *See* N.C. R. App. P. 21.

**Analysis**

**I. Jury instruction on defense of justification**

Crooks first argues that the trial court erred by denying his request for a jury instruction on the defense of justification. Ordinarily, when a defendant requests specific jury instructions, the trial court "must give the instructions requested, at

least in substance, if they are proper and supported by the evidence." *State v. Edwards*, 239 N.C. App. 391, 392, 768 S.E.2d 619, 620 (2015). On appeal, we review de novo whether the evidence supported the requested instruction. *Id.* at 393, 768 S.E.2d at 621.

The doctrine of justification is available as a defense to the charge of possession of a firearm by a felon. *State v. Mercer*, 373 N.C. 459, 463, 838 S.E.2d 359, 362 (2020). The justification defense is appropriate when, taken in the light most favorable to the defendant, there is evidence of each of the following factors:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Id.* at 464, 838 S.E.2d at 363.

Here, the evidence at trial was insufficient to establish the first factor of the *Mercer* test. Even assuming that Harrison's drunken act of firing his pistol into the wall or ceiling of his house represented an "impending threat of death or serious bodily injury" to Crooks, that threat was gone once Crooks left Harrison's trailer with the gun. But after that point, undisputed evidence showed that Crooks continued to possess the gun. He admitted at trial that he could have disposed of the gun in various

ways, such as throwing it on a roof or hiding it somewhere until police arrived. More importantly, Crooks testified that, once he took the gun to the Tuckers' home and learned that Karen Tucker was not there, he continued to possess the gun and remain inside that home with Tucker's two daughters, even after they informed Crooks that their mother Karen was at a nearby trailer with Crooks's father.

When asked why he stayed instead of going to his father's trailer at that point, Crooks explained that it was because "the sheriffs got over there" and that he had no other explanation:

> Q: Okay. But you stayed at Karen's place until she arrived?
>
> A: Yes. . . .
>
> Q: Why didn't you leave and go to your dad's place?
>
> A: The sheriffs got over there.
>
> Q: How did you know that?
>
> A: Because Echo called them. That's the other sister.
>
> Q: Why didn't you leave to go give her the gun?
>
> A: I just didn't.

In light of this evidence, Crooks failed to show that his possession of the gun was justified because he was in imminent danger. The danger had ended. But Crooks chose to keep possession of the gun in the presence of other people. The law does not permit Crooks that choice; once the threat (assuming one actually existed) was gone,

Crooks was required to relinquish possession of the firearm. *See State v. Craig*, 167 N.C. App. 793, 796–97, 606 S.E.2d 387, 389 (2005). Thus, the trial evidence did not support the first factor of the *Mercer* test and the trial court properly declined to provide a jury instruction on justification.

## II. Attorneys' fees

Crooks next argues that the trial court improperly imposed attorneys' fees without providing notice and an opportunity to be heard. The State concedes error and we agree.

Before imposing a judgment for the attorneys' fees of a defendant's court-appointed counsel, "the trial court must afford the defendant notice and an opportunity to be heard." *State v. Friend*, 257 N.C. App. 516, 522, 809 S.E.2d 902, 906 (2018). To afford the necessary opportunity to be heard, "trial courts should ask defendants—personally, not through counsel—whether they wish to be heard on the issue." *Id.* at 523, 809 S.E.2d at 907. "Absent a colloquy directly with the defendant on this issue, the requirements of notice and opportunity to be heard will be satisfied only if there is other evidence in the record demonstrating that the defendant received notice, was aware of the opportunity to be heard on the issue, and chose not to be heard." *Id.*

Here, Crooks's counsel had not calculated the number of hours worked on the case at the time of sentencing. The trial court explained to Crooks at sentencing that

"your attorney will calculate the time that he has expended in representing you. He will submit the total of his hours to me. I will sign what I feel to be a reasonable fee." The court later entered a civil judgment for $2,220 in attorneys' fees without first informing Crooks of that amount and providing Crooks the opportunity to address the entry of a civil judgment for that amount.

We agree with the parties that, under *Friend*, Crooks was not provided sufficient opportunity to be heard before entry of this civil judgment. We therefore vacate the civil judgment and remand for further proceedings on that issue in the trial court.

## Conclusion

We find no error in the trial court's criminal judgment. We vacate the civil judgment for attorneys' fees and remand that matter for further proceedings.

NO ERROR IN PART; VACATED AND REMANDED IN PART.

Chief Judge McGEE and Judge HAMPSON concur.